Orville L. FREEMAN, Secretary of Agriculture of the United States, Petitioner,

v.

BROWN BROTHERS HARRIMAN AND COMPANY, Respondent.

United States District Court
S. D. New York.

Feb. 3, 1966.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for petitioner; Alan G. Blumberg, Asst. U. S. Atty., of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for respondent.

Fromer, Stein & Berko, New York City, for owner of Account 104, appearing with permission of the Court; Martin A. Fromer, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge:

The Secretary of Agriculture moves to compel enforcement of a subpoena duces tecum against respondent banking corporation, Brown Brothers Harriman and Company. Respondent opposes enforcement contending that the Secretary lacks authority to subpoena persons not subject to regulation under the Agricultural Marketing Agreement Act (the Act) (7 U.S.C. § 601 et seq.). The respondent also maintains the subpoena is invalid because it was not signed personally by the Secretary. Respondent's customer Zausner, the records of whose account are the subject of the subpoena, was also heard in opposition to enforcement.

Under the Act, the Secretary has promulgated milk marketing orders which establish minimum prices that handlers of milk must pay to milk producers. See 7 U.S.C. § 608c; 7 C.F.R. §§ 1002, 1004; see generally, Fitchett Bros., Inc. v. Freeman, 241 F.Supp. 181 (S.D.N.Y. 1965). Having reason to believe that certain handlers were violating the pricing provisions of milk marketing orders, the Secretary instituted an investigation. The investigation was concerned primarily with payment of unlawful rebate charges by producers to handlers.

In the course of the investigation it appeared likely that several handlers have been purchasing milk from producers through "brokerage" firms controlled by one Sol Zausner. Some of the producers who delivered their milk to handlers through these "brokerage" firms apparently have paid "commission" fees into "Account 104" maintained at respondent's bank by Zausner.

Under the guise of such "brokerage commissions," the Secretary has reason to believe handlers are violating milk marketing orders by receiving unlawful rebates through the transfer of funds from this account to handlers. A subpoena duces tecum was served on respondent for records pertaining to "Account 104." Respondent's refusal to comply with the subpoena has resulted in this motion for enforcement pursuant to 7 U.S.C. § 610(h); 15 U.S.C. § 49. It is conceded by the Secretary for purposes of this motion, that neither respondent nor Zausner is subject to regulation under the Act.

Section 8a(7) of the Act (7 U.S.C. § 608a(7), gives the Secretary the power to "institute an investigation" whenever he "has reason to believe that any handler has violated * * * the provisions of any order * * *."

Section 10(h) (7 U.S.C. § 610(h)) confers upon the Secretary broad powers to enforce the Act by incorporating into the Act statutory provisions in Title 15 of the United States Code governing the Federal Trade Commission.

§ 10(h). "For the efficient administration of the provisions of this chapter, the provisions, including penalties, of sections 48, 49, and 50 of Title 15, are made applicable to the jurisdiction, powers, and duties of the Secretary in administering the provisions of this chapter, and to any person subject to the provi-

sions of this chapter, whether or not a corporation. * * *"

■ Section 49 of Title 15 confers upon the Federal Trade Commission the power to subpoena witnesses and documentary evidence relating to any matter under investigation.[1] This power extends to third parties who are neither under investigation nor being proceeded against. Federal Trade Commission v. Tuttle, 244 F.2d 605 (2 Cir.), cert. den., 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957); Federal Trade Commission v. Bowman, 248 F.2d 456 (7 Cir. 1957); see Federal Trade Commission v. Harrell, 313 F.2d 854 (7 Cir. 1963); Local 57, International Union of Operating Engineers (AFL–CIO) v. Wirtz, 326 F.2d 467, 469–70 (1 Cir. 1964); cf. Federal Communications Commission v. Cohn, 154 F.Supp. 899, 906 (S.D.N.Y.1957). The powers conferred upon the Federal Trade Commission and carried over into the Agriculture Act, therefore, are more than sufficient to permit the Secretary to subpoena the respondent.

Nevertheless, the respondent argues that the Secretary's powers are not as broad and inclusive as those of the Federal Trade Commission due to an alleged limitation placed upon the Secretary in Section 10(h), quoted above, incorporating § 49 of Title 15 into the Act. The clause in Section 10(h) "and to any person subject to the provisions of this chapter, whether or not a corporation," the respondent contends, is an express limitation on the Secretary's power of subpoena restricting it to persons subject to

regulation under the Act. There is no merit to respondent's contention.

■ In construing a statute, a particular expression should not be detached from its context so as to give it a special meaning. See Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); Cummings v. Board of Education, 275 App.Div. 577, 90 N.Y.S.2d 564, 573 (1st Dep't) aff'd, 300 N.Y. 611, 90 N.E.2d 67 (1949). Language should be construed according to its common meaning, without resorting to a forced or artificial construction. See Bracey v. Luray, 138 F.2d 8, 10 (4 Cir. 1943); United States Lines v. Shaughnessy, 101 F.Supp. 61, 64 (S.D.N.Y.), aff'd, 195 F.2d 385 (2 Cir. 1951).

With these elementary rules in mind, § 10(h), when read as a whole, makes it clear that the disputed clause expands the Secretary's powers rather than restricts them. Beginning the clause with the word "and," preceded by a comma, adds support to this interpretation.

■ Moreover, each section of a statute is to be interpreted in conjunction with other sections and in so far as possible, each section is to be harmonized with the others. Merkling v. Ford Motor Co., 251 App.Div. 89, 296 N.Y.S. 393, 399 (4th Dep't 1937); See People v. Dethoff, 283 N.Y. 309, 315, 28 N.E.2d 850, 853 (1940).

Section 8d(1) of the Act (7 U.S.C. § 608d(1)), requires all persons subject to regulation under the Act to furnish the Secretary with such information, books and records as the Secretary finds necessary.[2] Where the requested informa-

---

1. "For the purposes of sections 41–46 and 47–58 of this title the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation."

2. § 608d. Books and records; disclosure of information.
   "(1) All parties to any marketing agreement, and all handlers subject to an order, shall * * * upon the request of the Secretary, furnish him with such information as he finds to be necessary to enable him to ascertain and determine the extent to which such agreement or order has been carried out or has effectuated the declared policy of this chapter and with such information as he finds to be necessary to determine whether

tion has not been furnished, the Secretary is given the authority to examine all documents he deems relevant.

■ Under respondent's interpretation of § 10(h), it limits the Secretary to the powers Congress has already conferred upon him through § 8d(1). Under this interpretation § 10(h) becomes a meaningless provision. Such an interpretation should be avoided. Cf. In re Smathers' Will, 309 N.Y. 487, 495, 131 N.E.2d 896, 900 (1956); People v. Dethoff, supra, 283 N.Y. at 315, 28 N.E.2d at 852.

Nevertheless, the respondent argues that its restrictive interpretation of § 10(h) is correct because § 10(h) provides the means for enforcing the powers enumerated in § 8d(1). This argument was raised and rejected in Federal Trade Commission v. Tuttle, supra, 244 F.2d at 614, which involved similar statutory provisions. The court stated:

"Further, if the second half of the first sentence of Section 9 limits the subpoena power of the Commission to documents of the corporation under investigation, to which the Commission is given access and the right to make copies under the first half of the sentence, of what use is the grant of the power of subpoena? The Commission could get all the information it wanted from the corporation under the access and copying power. Respondent's construction of the language granting the subpoena power, would in effect render the subpoena power useless—an absurd result never contemplated by the Congress."

The legislative history is also contrary to the respondent's interpretation.

■ The legislative history shows that it was the clear intention of Congress to confer upon the Secretary the same powers granted the Federal Trade Commission rather than impose limitations upon him. See H.R. Conference Rep. No. 11 (73rd Cong., 1st Sess. 11 (1933)); 77 Cong.Rec. 1986 (1933) (remarks of Senator Smith, Chairman of the Agriculture Committee and Senator Fess); H.R. No. 808, 74th Cong., 1st Sess., (1935) (Committee on Agriculture Report accompanying H.R. 7713.)

A comparison of the functions of the Federal Trade Commission and the Department of Agriculture readily discloses the obvious reason for the language of the disputed clause.

The Federal Trade Commission regulates primarily corporate activity. See, e. g., 15 U.S.C. §§ 44, 46, 48, 49, 50. The Department of Agriculture, on the other hand, is concerned with persons as well as corporations dealing in agricultural commodities. See, e. g., 7 U.S.C. § 599(1); 7 C.F.R. § 1001.5. The section incorporating the powers of the Federal Trade Commission into the Agricultural Act, therefore, expressly provides that the powers conferred upon the Secretary extend to individuals who are regulated under the Agricultural Act in addition to corporations.

■ Absent a clear showing to the contrary, it is to be presumed that Congress intended to confer upon the Secretary adequate powers to enable him to perform his duties. Cf. Federal Trade Commission v. Tuttle, supra, 244 F.2d at 214–16. Without advancing a logical reason in light of the purposes of the Act, or citing any controlling authority, respondent has wholly failed to sustain

or not there has been any abuse of the privilege of exemptions from the antitrust laws. * * *. For the purpose of ascertaining the correctness of any report made to the Secretary pursuant to this subsection, or for the purpose of obtaining the information required in any such report, where it has been requested and has not been furnished, the Secretary is authorized to examine such books, papers, records, copies of income-tax

reports, accounts, correspondence, contracts, documents, or memoranda, as he deems relevant and which are within the control (1) of any such party to such marketing agreement, or any such handler, from whom such report was requested or (2) of any person having, either directly or indirectly, actual or legal control of or over such party or such handler or (3) of any subsidiary of any such party, handler, or person."

an interpretation of the Act that would impair the Secretary in the performance of his duties.

■ I therefore reject the construction advanced by the respondent and hold that the Secretary may obtain information relating to a matter under investigation by a subpoena duces tecum served upon a person who is not subject to regulation under the Act. This is in accord with Judge Lord's recent opinion which passed upon the same issue. Freeman v. Fidelity-Philadelphia Trust Co., 248 F. Supp. 487 (E.D.Pa.1965).

The respondent raises one other point which is equally without merit. It argues that even assuming the Secretary has subpoena power under these circumstances, the subpoena is still invalid as the Secretary did not personally sign it.

To interpret the law as requiring the Secretary personally to sign all subpoenas is inconsistent with orderly and responsible administration and could well result in paralysis of various functions of the Department of Agriculture. Cf. Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 122–123, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947); National Labor Relations Board v. John S. Barnes Corp., 178 F.2d 156 (7 Cir. 1949).

Nevertheless, the respondent contends that only the Secretary can sign a subpoena since the provisions governing the Federal Trade Commission incorporated into the Act appear to limit the signing of a subpoena to members of the Commission. (15 U.S.C. § 49.)

■ The subpoena presently before the court is signed by the Deputy Administrator of Regulatory Programs, Consumer and Marketing Service, Department of Agriculture. Even assuming the proposition that the Act required the Secretary personally to sign the subpoena, but see Freeman v. Fidelity-Philadelphia Trust Co., supra, it is clear that under subsequent legislation now in force the present subpoena is validly issued under the authority of the Secretary of Agriculture lawfully delegated to the Deputy Administrator.

5 U.S.C. §§ 133z to 133z–15 provides that whenever the President finds it necessary to authorize any officer to delegate any of his functions to accomplish the purposes of § 133z, he shall prepare a reorganization plan and submit it to Congress. Pursuant to these provisions, Reorganization Plan No. 2 of 1953 (67 Stat. 633, 18 Fed.Reg. 3219, Note, 5 U.S. C.A. § 511 (Supp.1951–61)) vested all functions of the Department of Agriculture in the Secretary of Agriculture. The plan further provided that the Secretary may delegate any such function to any officer, agent or employee of the Department. (§ 4(a).) See Freeman v. Fidelity-Philadelphia Trust Co., supra. The authority to sign subpoenas was delegated as follows:

1. Delegation of powers from Secretary of Agriculture to Administrator of Agricultural Marketing Service, including any necessary redelegation of powers (29 Fed.Reg. 16212, December 3, 1964).

2. Delegation of powers from Administrator of Agriculture Marketing Service to the Deputy Administrator, Regulatory Programs (30 Fed.Reg. 1260, 1263, February 5, 1965).

3. Change of name from Agricultural Marketing Service to Consumer and Marketing Service (30 Fed.Reg. 2160, February 17, 1965, and 30 Fed.Reg. 6597, May 13, 1965).

Insofar as § 4(b) of the Reorganization Plan is applicable, its provisions for notice and opportunity to be heard were fully met.

The Secretary's motion to compel enforcement of the subpoena duces tecum is granted.

Settle order on notice.